We will proceed to the fourth case, Holloway v. Soo Line Railroad. Mr. Bishop. May it please the court, John Bishop on behalf of the appellant, Douglas Holloway. Basically this case, the facts, very short version of the facts is that Mr. Holloway was a conductor and he was assigned to set cars, set up a train at the Bensonville Yard for CP Rail. Part of his crew was a person, J.S., and she was the swishman. She goes into the area to pick up what they call a Kubota. I wish I had pictures for the court, but imagine a souped up golf cart. She went to get the Kubota and he went into the office to get the switch list from the yardmaster. She's driving, he's in the passenger seat. He says he didn't see any seat belts. They claim that there were. And they proceeded to go forward and not too far ahead, the Kubota struck a switch stand, causing both the driver and Mr. Holloway injuries. The only difference was that his injury was reportable because he received medication, reportable to the FRA. So that brings us to the law, the retaliatory law of the FRSA. And that says that his activity, his illegal activity was reporting an injury and that got him disciplined. Eventually they had a formal investigation and they charged him with not driving the Kubota in a safe manner, also not wearing a seat belt. And they dismissed him for that. Now, he wasn't driving the Kubota, he was a passenger. But yet they added that charge so that they could fire him. Comparable employees that were charged with not wearing a seat belt, either driving or being driven in a company vehicle, they got T.O.P.S., five day suspension. One individual that the railroad provided was a person that drove a vehicle and got in an accident and that person was dismissed. So we are claiming that they trumped up the charges against Holloway because he reported an injury, on the job injury. And that's what got him fired. Mr. Bischoff, can you, this precise point was one that the district court did it not, it focused on as well, in the opinion or in the judgment that you're appealing. And as I read the district court opinion, what the district court is saying is that, look, we understand the allegation just fine. That there was some kind of retaliation occurring here. But the district court focused on what it saw as an evidentiary deficit. That the contentions that you're making were just not supported by evidence. So what evidence can you point us to in the record that supports the argument you make? So with respect to testimony or documents, can you be specific as to evidence? The individual that was the driver of the vehicle did not receive any discipline. The individual... But she also reported the injury. Yeah, but it wasn't reported to the F.R.A. There's reportable and non-reportable injuries. She also didn't have quite the disciplinary record that your client did. Well, the appellee, the railroad got into that. And I went through what they reported to show what a sham that was, saying what his record was. They didn't... But do you dispute Judge Barrett's point that the, what's the other person's name, JS or something? JS. That SJ had a comparatively clean record. Is there evidence that shows that that's wrong? No, there's no evidence that shows that that's wrong. But for them to fire him, they had to add the charge that he was the one that was unsafely operating the Kubota. All the other people that were not wearing seatbelts that the railroad reported to us, the most they got were five days suspension. And that's my response to their, my reply to their response. And these other five people, is there record evidence as to what they did and what did or did not happen to them? Are you just saying that? In other words, where in the record is that? I show, I cite the tabs that the defendant had provided that's in the record if you look at my reply brief. All right. Go ahead. No, go ahead. So, was there a question pending? No, no, you answered it. Okay. So, what I'm saying is that the reason that they fired him was that they said that he was unsafely operating the Kubota, which was untrue. He was not the driver. They know he wasn't the driver. But they added that charge so that they could fire him. Because he reported, he reported an on-the-job injury that had to be reported to the FRA. J.S.'s injury did not have to be reported because she didn't receive any medication. But why would that matter? Could you retaliate even if it isn't reported to the FRA? And they point out that by the time she would have been subject to discipline, she was looking for employment elsewhere because she had been furloughed and then moved on. Well, that's true. But the whole purpose of the FRSA retaliation portion is because of the fact that railroads were coming down on people that were reporting injuries that they had to go and report to the FRA. That's the whole purpose, and that was the whole reason why the FRSA Retaliatory Act was enacted. And I go into great detail at the beginning of my brief about that, about the history of the FRSA. So why would they charge him with something that they know that he wasn't the operator of the vehicle? And then regardless if he had a seatbelt on or not seatbelt on, he has a reason why he didn't have it on. One, he didn't see any. The other, they were doing an inspection, which is what they're supposed to do all the time. And he gets fired knowing that he never operated the vehicle. So I don't know what else you need as far as proof is concerned about a retaliation unless you get an admission right from the railroad saying, we knew he didn't drive it, we just decided to fire him because he filed a report. I mean, I think that this is something that should be decided by a jury. I think the witnesses on there, they'll be able to tell the credibility of the witnesses, they'll see the documentation of the charges, and the result, he gets fired. They do not assess any discipline at all to JS, who was the operator of the vehicle, and also was not wearing a seatbelt. Wasn't this, or hadn't Mr. Holloway had five disciplinary actions in the course of a year? He had, well, three that I know of. One was... I think this was the fifth one, the result of this incident. Well, one of them, he tried to show up for the, I pretty much covered this in my reply, in response to the statements of the discipline that, the proceedings that occurred. One, he wasn't able to go to the formal investigation because he was forced to work the day before at midnight, all the way until the next day. He told crew management that, I've got to be at a hearing tomorrow. No, you've got to go to work. And he wasn't able to defend himself. And the other one was, he brought a doctor's excuse that showed that he missed less than three days in the month of September, but they didn't buy it. And the other one, he said, the hazmat sheet, he said he wasn't the original conductor. The original conductor turned it in. Thank you, Mr. Fisher. Your time has expired. I'll give you two minutes for rebuttal. Okay, thank you. Ms. Doneski. Thank you, Your Honors. May it please the Court, Honorable Judges, there are three grounds upon which Mr. Holloway's appeal should be denied in summary of judgment affirmed in this case. First, the district court properly applied this court's governing legal standard on contributory cause, which requires evidence of intentional retaliation. Second, the district court properly reviewed the record in this case against that governing legal standard and correctly held that Mr. Holloway's bare-boned arguments fell far short of meeting the causation standard that FERSA requires. And third, while the district court did not reach this issue, affirmance is warranted under the CP establishing its affirmative defense. I'd like to address each of these points a little bit more fully. First, as to the legal standard, despite Mr. Holloway's best attempts to misguide this court otherwise in the briefing, the legal standard on contributory cause is not an undecided issue in this court. This court has squarely held in the Coziara and the Armstrong decisions that proof of intentional discrimination is required for a FERSA plaintiff to establish causation. And in the briefing, at the lower court, and here today, there has not been any evidence presented by the plaintiff to point to evidence in the record that CP acted with intentional retaliation in its dismissal of Mr. Holloway. The argument of some type of chain of events causation analysis that Mr. Holloway relies on, it legally fails. We know that from the Coziara decision. He must show more than simply the factual chain of events of he reported an injury and then was dismissed thereafter. That is simply not enough. And when you look at the other evidence he seeks to rely on, it is insufficient. First, he relies on JS, those are her initials, for confidentiality purposes for the court, arguing that she was not ultimately disciplined for her role in the Kubota incident. But Mr. Holloway's heavy reliance on comparing to JS fails on at least three grounds. The first, as Your Honor referred to earlier, you're exactly right. By the time the hearing occurred, actually, first of all, she, too, did engage in protected activity as well. Does it matter? Can you address Counsel's point about the report to the FBI? Absolutely, Your Honor, and here is the key and critical point, and it's a plain language of the statute. 20109A4, which is the provision under Federal Rail Safety Act that provides that employees are protected for notifying rail carriers of work injuries. There is absolutely no language in the statute that makes any distinction whatsoever between reported injuries that are very reportable, ultimately, under the guidelines, or not. So the fact that JS reported an injury, regardless of whether it was ultimately determined to be reported to FRA, it's irrelevant. There's no support in the plain language. In fact, 20109A4 doesn't even use the word report. It says notify the rail carrier of a work injury. So there's absolutely no support for that argument that Mr. Holloway relies on heavily in this case. And moreover, it is undisputed that JS was furloughed due to reduction in force at the time that the CBA hearing was held. And as a result of that, and the union representative explained she was looking for employment elsewhere, quite frankly, the issue was moot at that point. But under the CBA terms, because there was no evidence of her conduct introduced at that hearing, the requirements of the collective bargaining agreement require that the discipline be assessed only as to that hearing record. Because there was no evidence as to her, no discipline was assessed. And then JS is simply not a comparator. As your honors have each referenced, her discipline record was far different than Mr. Holloway. She had no discipline. She had one counseling letter and then no discipline thereafter. Whereas Mr. Holloway had counseling very early in his brief employment with the company. He had a 10-day suspension. He had a 15-day suspension. A 30-day suspension, and ultimately a dismissal. Far different disciplinary records. In addition, JS passed all of her efficiency tests, whereas Mr. Holloway failed 5 out of 55. JS, as I mentioned, was furloughed, and he was still an active employee. And so they differentiate based on that. And even to the extent they were comparable while they were active employees, and they each were involved in the incident, the record shows that the company reviewed the matter after the incident occurred. There's no deviation from their practices or procedures. They noticed both for hearing for alleged rule violations and proceeded from there. It was only at the point that she was furloughed that those distinctions certainly become material. I do want to also address, though, to that, this point that Mr. Bischoff raised about being found to have violated this additional, the trumped-up charges argument that he raised, that the company charged him with failing to operate the vehicle safely. Let me explain that. What happened there, Your Honors, is that if you look at the contractual hearing notice that is required to be issued under the contract, both of them were noticed on the hearing in the same notice. So they collected the alleged violations in one hearing notice and addressed them to both of them. The hearing notice refers to them as alleged violations. They refer to the hearing to be determined as to their responsibility, if any. There's no prejudgment. There was no suggestion that he had violated either or both of those rules. Critical to that is that after the hearing, and looking at the dismissal letter, while they quote the hearing notice language in quotations of what the hearing notice provided, what is critical to know is that what the carrier found him to have violated is Safety Rule T4, which is the seat belt rule violation, which applies equally to the driver and the passenger. It does not, both of them, the language is, while riding or operating the vehicle, you must wear a seat belt if it's equipped with one. And so that's what he was found to have violated. And then upon looking at his discipline record, which had amassed three to four disciplinary suspensions, prior, in a very short time period, the carrier concluded that dismissal was warranted. Beyond that, I believe the remainder of Mr. Holloway's arguments as to, and so to that argument, there's really no evidence of pretext here. There's no evidence to the point about the report of injury being FRA reportable and what further was intended to do. I mentioned the plain language. But moreover, it is plaintiff's burden to come forth with circumstantial or other evidence of intentional retaliation, and there is not a hint of that in this record. There's no evidence that managers acted with any hostility or negativity towards Mr. Holloway after the report. He had disciplinary suspensions prior to any protected activity, so they didn't act any differently. They took in the report. When he asked for medical treatment, they took him to medical treatment. All those facts are undisputed. There is no evidence of animus, hostility, no evidence of pretext. There's no evidence in a multilevel review process, which is extensively documented in the record, that the hearing officer and others who reviewed, Mr. Held, the hearing record here was in any way thinking, considering, talking about that the injury report was in any way tied to their decision. It's all about the seatbelt violation that he violated on that day, and the argument that he said he didn't see the seatbelts, they considered it, they found it unpersuasive, and they found that he had violated the rule. In fact, he admitted that he was not wearing his seatbelt on the day in question. As to the, there was a 15 mile an hour exception that he tried to argue as well, but that argument he never raised at the CBA hearing, and so it should not be, it is not this court's province to go and re-examine the personnel decisions, particularly those that aren't raised below, and obviously the carrier can't have an intent to retaliate if it wasn't before them. Lastly, on the affirmative defense, even if the court were to reach that issue, that too has been shown in the record that CP has met that affirmative defense for all the reasons stated above, but we have presented evidence of other employees who violated seatbelt rule violations, and without those employees having reported alleged work injuries. This shows that CP regularly disciplines employees for seatbelt violations. The fact that employees were not dismissed for the violations does not preclude their consideration in CP establishing its defense. None of these employees had the same extensive disciplinary record as Mr. Holloway did, and this accounts for the difference in the discipline level assessed. Moreover, the record has an example of an employee who was dismissed for a lengthy disciplinary record like Mr. Holloway. He failed to operate the vehicle safely, and the fact that that's not 100% identical in the rule violation, the KUDEC case answers. It's not required to show 100% identical circumstances on the affirmative defense, and the KUDEC case relied on other violations by other employees. They weren't the same infractions, and they still found the affirmative defense to be met there. For these reasons, I would respectfully request that the court affirm the district court's summary judgment. Thank you, Ms. Doneski. Mr. Bishop? The two cases counsel speaks of is the Casiara. I'm probably missing the name, but in that case, it had to do with an individual that was working with the pre-assault wood that they used to make the tracks, put the tracks on. They found out in this formal investigation that he was taking these and either selling them or distributing them to a farmer. Well, the pre-assault is dangerous, and it's against the rule. He was fired for that reason, not because they disciplined him for something else, for reporting an injury. That wasn't why he was fired. Rightfully, that would be a reason to fire the person. Now, the Armstrong case, it's interesting because of the history of the Armstrong case. At the trial level, both sides filed for summary judgment. The court denied the summary judgment. It went to trial. The jury found in favor of the railroad. The jury came back and said the discipline is not related. It wasn't retaliation. It wasn't related to the injury. A jury decided that, not the court. Denied the motions for summary judgment at the beginning, proceeded to trial, and the jury made that decision. I believe that the jury should decide this case. Thank you, Mr. Piercio. Thanks to all counsel. Case is taken under advisement.